<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW JERSEY

```
FILED
JAMES J. WALDRON, CLERK

December 3, 2014

U.S. BANKRUPTCY COURT
      NEWARK, N.J.
BY: /s/Nelson DosSantos, Deputy
```

|   |   |
|---|---|
| IN RE: | CHAPTER 11 |
| New Life Adult Medical Day Care Center, Inc., | |
| Debtor. | CASE NO.: 11-43510 (NLW)<br>12-29807 (NLW)<br>Jointly Administered |
| New Life Adult Medical Day Care Center, Inc., | **OPINION** |
| Plaintiff, | ADVERSARY NO.: 13-1076 |
| v. | |
| Failla & Banks, LLC and Vincent J. Failla, Esq., | |
| Defendants. | |

**Before:    HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Donald F. Campbell, Jr., Esq.
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road, Suite 300
Red Bank, NJ 07701
Attorneys for Defendants

Sam Della Fera, Jr., Esq.
Trenk, DiPasquale, Della Fera & Sodono, PC
347 Mount Pleasant Avenue, Suite 300
West Orange, NJ 07052
Attorney for Plaintiff

This matter is before the court on Defendants' Motion for Summary Judgment as to all eleven counts of Plaintiff's complaint. As described below, the court grants summary judgment in favor of Defendants because creditors were paid in full under a confirmed plan of liquidation and there is no benefit to the estate under 11 U.S.C. § 550 because there is neither a reorganized entity nor creditors that benefitted from a reorganized entity.

## JURISDICTION AND VENUE

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on September 18, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A)(E) and (H). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

a.  **General Background**

New Life Adult Medical Day Care Center, Inc. ("Debtor" or "New Life") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on November 21, 2011 ("Petition Date"). The Debtor continued in possession of its property and management of its affairs. However, during the course of the Chapter 11 case day-to-day management of the Debtor was overseen by a Chief Restructuring Officer, who was authorized to act by court order dated December 29, 2011. The Debtor operated an adult medical day care center, providing daily recreational activities, meal services and some minimal medical care to its clients. The jointly administered debtor, Providian Realty Corp. ("Providian") filed its

Chapter 11 petition on August 9, 2012. Providian owned the real estate on which the Debtor conducted its business.[1]

As of the Petition Date, the sole owner of the Debtor was Herkimer Investment, LLC ("Herkimer"). Herkimer acquired the shares of the Debtor on June 27, 2011, following litigation in the Superior Court of New Jersey, Law Division, Bergen County, captioned *Herkimer Investment, LLC v. Marina Goldstein; Alexander Goldstein; Elena Riadtchikova; Zhanna Alergant; New Life Adult Day Care Center, Inc. a/k/a New Life Medical Care Corp.; Ronald H. Shaljian, Esq.* ("State Court Action").

After operating the business in Chapter 11 for almost a year, the Debtor determined that it was in its best interest to sell its business and related assets. Accordingly, on September 6, 2012 the Debtor moved under § 363 of the Bankruptcy Code to sell substantially all of its assets. On October 19, 2012, the Court entered an *Order Authorizing and Approving (A) Sale of Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances pursuant to 11 U.S.C. §§ 105(a) and 363(b), (f) and (m); (B) Assumption, Assignment and Rejection of Executory Contracts and Unexpired Leases pursuant to 11 U.S.C. 365; and (C) Granting Other Related Relief* (the "Sale Order"). The Sale Order authorized the Debtor to sell all of its assets to Rio Vista Capital, LLC, for the aggregated amount of $5,150,000.00, with closing to occur by November 20, 2012. The sale to Rio Vista Capital, LLC closed on December 5, 2012. *See* Defendants' Statement of Undisputed Facts at ¶ 30.

On April 15, 2013, the Debtor filed a *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Joint Chapter 11 Plan Proposed by the Debtors and Debtors-in-Possession* ("Disclosure Statement"), attaching the Joint Plan of Reorganization ("Plan") as

---

[1] The order for joint administration was entered on November 12, 2012.

Exhibit A. On May 30, 2013, the Court entered an *Order Finally Approving Debtors' Disclosure Statement and Confirming Debtors' Joint Plan of Reorganization* ("Confirmation Order"). Despite its label as a plan of "reorganization" the Plan proposed an "orderly liquidation."[2]

The Plan provided for payment of all claims against both New Life and Providian. Unity Bank, the only secured creditor of both New Life and Providian was paid in full from the sale proceeds paid by Rio Vista Capital, LLC. Likewise, the Plan provided for full payment of Priority Tax Claims and Non-Tax Priority Claims. Finally, the Plan provided for payment of the allowed general unsecured claims against New Life in full with interest at the legal rate. The Plan further provided that after liquidating the Debtor's assets and making a 100% payment to creditors, the "balance of value in the New Life estates, including cash, unsold assets, claims and causes of action, shall be distributed to the holder of the Equity Interest in New Life." *See* Plan, page 1.

On August 20, 2013, the Debtor filed a *Report of Initial Distribution Under Confirmed Chapter 11 Joint Plan of Reorganization* ("Report of Initial Distribution"). The Report of Initial Distribution set forth allowed claims totaling $146,378.40 and distributions (made on August 1, 2013) totaling $146,378.40. The Report of Initial Distribution states that based on these payments "the Reorganized Debtors have substantially consummated the Plan."

b. **The Adversary Proceeding**

On January 18, 2013, the Debtor filed the *Complaint* against Failla & Banks, LLC and Vincent J. Failla, Esq. ("Defendants") thereby initiating the within Adversary Proceeding. The

---

[2] The sale of all of the Debtor's assets already occurred before the end of 2012.

Complaint seeks the return of funds allegedly transferred from or on behalf of the Debtor to the Defendants, both pre- and post-petition, in connection with legal services provided by the Defendants in the State Court Action.

The Complaint includes the following counts against Failla & Banks, LLC ("Law Firm Defendant"):

- Count I - Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B);

- Count II – Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(A);

- Count III – Fraudulent Transfer under 11 U.S.C. § 544 and N.J.S.A. 25:2-25(b) and N.J.S.A. 25:2-29;

- Count IV – Fraudulent Transfer under 11 U.S.C. § 544 and N.J.S.A. 25:2-27(a) and N.J.S.A. 25:2-29;

- Count V – Fraudulent Transfer under 11 U.S.C. § 544 and N.J.S.A. 25:2-25(a) and N.J.S.A. 25:2-29;

- Count VI – Post-Petition Transfer and Recovery under 11 U.S.C. §§ 549 and 550;

- Count VII – Unjust Enrichment

The Complaint includes the following counts against Vincent J. Failla, Esq. ("Attorney Defendant"):

- Count VIII - Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B);

- Count IX – Fraudulent Transfer under 11 U.S.C. § 544 and N.J.S.A. 25:2-25(b) and N.J.S.A. 25:2-29;

- Count X – Fraudulent Transfer under 11 U.S.C. § 544 and N.J.S.A. 25:2-27(a) and N.J.S.A. 25:2-29;

- Count XI – Unjust Enrichment

Initially, the Pre-Trial Order provided for completion of discovery by June 3, 2013. This deadline was extended to July 15, 2013 by the First Amended Pre-Trial Order, and then to September 23, 2013 by the Second Amended Pre-Trial Order.

On February 14, 2014, the Defendants moved for summary judgment ("Summary Judgment Motion") with regard to all Counts of the Complaint. On March 18, 2014, the Plaintiff filed its *Opposition to Defendants' Motion for Summary Judgment* ("Opposition"). On March 21, 2014, the Defendants filed their *Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment* ("Reply").

### i. Undisputed Facts

Prior to Herkimer's ownership of the Debtor, Elena Riadtchikova ("Riadtchikova") and Zhanna Alergant ("Alergant" and, together with Riadtchikova, "Former Owners"), owned the Debtor from its founding year, 2000, until the change in ownership in 2011. (Complaint at ¶ 8, Answer at ¶ 8). Alergant was also an employee of the Debtor and managed all aspects of the business. (Plaintiff's Statement of Facts, page 1).

The State Court Action resulted from a series of loans made by Herkimer in 2006 to 2007 to Alergant's brother, Alexander Goldstein and his wife, Marina Goldstein ("Goldsteins"). (Complaint at ¶¶ 9 and 12, Answer at ¶¶ 9 and 12). In connection with these loans, the Former Owners executed a guarantee of the loans to the Goldsteins and, as security, pledged their stock interest in the Debtor, totaling 100% of the shares of the Debtor. (Complaint at ¶¶ 9 and 10, Answer at ¶¶ 9 and 10).

The Goldsteins defaulted on the loans and Herkimer initiated the State Court Action. (Complaint at ¶ 12, Answer at ¶ 12). In the State Court Action, Herkimer sought, *inter alia*, to foreclose on the Debtor's stock that was held in escrow pursuant to a Stock Pledge Agreement. (Complaint at ¶12, Answer at ¶ 12). Herkimer also demanded judgment against all of the named defendants, including the Debtor, for all amounts due to Herkimer. (Certification of Vincent J. Failla, Esq. ("Failla Cert.") at ¶ 7, Exhibit B).

On December 3, 2009, the Former Owners retained the Defendants to represent them and the Debtor in the State Court Action. (Failla Cert. at ¶ 3, Exhibit A). In connection with the Defendants' representation of the Former Owners and the Debtor in the State Court Action, the Defendants filed an answer, cross-claim, and counterclaim, prepared discovery responses, defended discovery motions and summary judgment motions, and participated in a two and a half day trial. (Failla Cert. at ¶¶ 9, 10, 11, 12, 14, 15 and 17, Exhibits C, D, E, F and G).

On June 27, 2011, the Superior Court entered a judgment solely against the Former Owners. (Complaint, Exhibit A). In particular, $1,365,000 against Alergant and $3,211,120 against Riadtchikova. (Complaint, Exhibit A). On the same date, the Superior Court foreclosed the Former Owners' interest in the Debtor, and Herkimer became the sole owner. (Complaint, Exhibit A). No judgment was entered against the Debtor.

On August 10, 2011, the Defendants filed an appeal on behalf of the Former Owners. (*Certification of Amanda Graham, Esq. in Opposition to Defendants' Motion for Summary Judgment* ("Graham Cert.") at ¶¶ 5 and 6, Exhibits C and D).

Case 13-01076-NLW    Doc 18    Filed 12/03/14    Entered 12/03/14 14:30:02    Desc Main
                            Document      Page 8 of 14

In connection with work performed in the State Court Action, the Defendants sent invoices to the Debtor and the Former Owners. The Former Owners and the Debtor made payments to the Defendants as follows:

| Transfer No. | Check/Credit Card No. | Check Date/ Payment Date | Amount | Payer | Payee | |
|---|---|---|---|---|---|---|
| 1 | 10519 | 12/1/2009 | $5,000.00 | Debtor | Law Firm | |
| 2 | 10656 | 2/1/2010 | $7,000.00 | Debtor | Attorney | |
| 3 | 10744 | 4/1/2010 | $2,912.55 | Debtor | Law Firm | |
| 4 | 10841 | 4/1/2010 | $4,522.03 | Debtor | Law Firm | |
| 5 | Visa 4190 | 6/2/2010 | $5,500.00 | Alergant | Law Firm | |
| 6 | Visa 4190 | 6/21/2010 | $3,000.00 | Alergant | Law Firm | |
| 7 | 11006 | 7/1/2010 | $2,951.42 | Debtor | Law Firm | |
| 8 | 11032 | 8/1/2010 | $4,504.71 | Debtor | Law Firm | |
| 9 | 11103 | 9/1/2010 | $3,818.73 | Debtor | Law Firm | |
| 10 | 11140 | 9/1/2010 | $1,604.34 | Debtor | Law Firm | |
| 11 | 11215 | 10/1/2010 | $1.803.68 | Debtor | Law Firm | |
| 12 | 11290 | 12/1/2010 | $1,555.68 | Debtor | Law Firm | |
| 13 | 11386 | 1/28/2011 | $1.958.36 | Debtor | Law Firm | |
| 14 | 11481 | 3/4/2011 | $2,000.00 | Debtor | Law Firm | |
| 15 | 11495 | 3/10/2011 | $2,000.00 | Debtor | Law Firm | |
| 16 | Amex 1013 | 4/1/2011 | $2,000.00 | Alergant | Law Firm | |
| 17 | Amex 1013 | 5/2/2011 | $2,000.00 | Alergant | Law Firm | |
| 18 | Amex 1013 | 5/13/2011 | $2,000.00 | Alergant | Law Firm | |
| 19 | Amex 1013 | 5/20/2011 | $2,000.00 | Alergant | Law Firm | |
| 20 | Amex 1013 | 6/1/2011 | $2,000.00 | Alergant | Law Firm | |
| 21 | Amex 1013 | 6/3/2011 | $2,000.00 | Alergant | Law Firm | |
| 22 | Amex 1013 | 7/1/2011 | $4,000.00 | Alergant | Law Firm | |
| 23 | Amex 1013 | 7/28/2011 | $4,000.00 | Alergant | Law Firm | |
| 24 | Amex 1013 | 8/5/2011 | $5,000.00 | Alergant | Law Firm | |
| 25 | Amex 1013 | 8/12/2011 | $5,000.00 | Alergant | Law Firm | |
| 26 | Amex 1013 | 8/31/2011 | $4,000.00 | Alergant | Law Firm | |
| 27 | Amex 1013 | 9/9/2011 | $10,000.00 | Alergant | Law Firm | |
| 28 | Amex 1013 | 10/3/2011 | $10,000.00 | Alergant | Law Firm | |
| 29 | Amex 1013 | 11/1/2011 | $10,000.00 | Alergant | Law Firm | |
| 30 | Amex 1013 | 11/23/2011 | $5,000.00 | Alergant | Law Firm | Post-Petition |
| 31 | Amex 1013 | 11/30/2011 | $30,000.00 | Alergant | Law Firm | |
| 32 | Amex 1013 | 1/1/2012 | $5,000.00 | Alergant | Law Firm | |
| **TOTAL** | | | $154,131.50 | | | |

(Failla Cert. at ¶¶ 19 and 23, Exhibits I and J).

All payments made by check were written from the Debtor's bank account to the Law Firm Defendant, with the exception of one check written from the Debtor's bank account to the

Attorney Defendant (collectively, "Check Transfers"). These are Transfer Nos. 1-4 and 7-15 on the above chart.

All payments made by credit card were made by Alergant on her personal credit cards ("Credit Card Transfers"). (Failla Cert. at ¶¶ 25, 26, 27, and Exhibit L). These are Transfer Nos. 5-6 and 16-32 on the above chart.

The credit card statements reveal that the credit card account was held jointly with Boris Alergant and the credit card statements were mailed to Alergant's residence. (Certification of Donald F. Campbell, Jr. ("Campbell Cert."), Exhibits C & E)

The Debtor paid Alergant's credit card bills. (Certification of Matthew Schwartz, CPA/CFF, CFG, CIRA in opposition to Defendants' Motion for Summary Judgment (Schwartz Cert.") at ¶ 16; Defendants' Reply, page 6).

### ii.    Disputed Facts

The parties dispute whether the Attorney Defendant deposited Check No. 10656 directly into the Law Firm Defendant's bank account. (Failla Cert. at ¶ 24, Exhibit K; Plaintiff's Memorandum of Law at page 31.

The parties dispute whether the Debtor was insolvent. (Campbell Cert. at ¶¶ 6 and 8, Exhibits D and F); ("Schwartz Cert.") at ¶¶ 10 -12, 14, 15, 21, Exhibits A, E and H).

The parties dispute whether the Defendants gave value in representing the Debtor in the State Court Action. (Failla Cert. at ¶¶ 8-20; Plaintiff's Statement of Facts, page 1).

## DISCUSSION

### a. Summary Judgment Standard

Rule 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides for entry of summary judgment where "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material when its resolution 'might affect the outcome of the suit under governing law….'" *Justofin v. Metro. Life Ins.,* 372 F.3d 517, 521 (3d Cir. 2004). An issue of material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323  Once the moving party satisfies its burden, "the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *DeAngelis v. Young (In re Young)*, 2010 WL 4777626, *5 (Bankr. D.N.J. Nov. 15, 2010), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp.*, 477 U.S. at 323. A properly supported motion for summary judgment "will not be defeated by the mere existence of some factual dispute between the parties," unless the dispute over those facts has the potential to affect the lawsuit's outcome. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). A party may not defeat a motion for summary judgment unless the party sets forth specific facts in a form that "would be admissible in evidence." *In re Young*, 2010 WL 4777626 at *5. If the non-moving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary

judgment for the movant. *Id.*, *citing Anderson*, 477 U.S. at 249-50, *see also*, *Ponzoni v. Kraft General Foods, Inc.,* 774 F. Supp. 299, 308 (D.N.J. 1991) *aff'd* 968 F.2d 14 (3d Cir. 1992)(opposing party must demonstrate specific facts evidencing a need for trial.)

### b. Issues

The Defendants' Summary Judgment Motion raises three issues. First, whether the Plaintiff can avoid the Check Transfers: checks written against the Debtor's account to the Law Firm Defendant, and, in one instance, the Attorney Defendant. Second, whether the Plaintiff can avoid the Credit Card Transfers. Third, whether the Law Firm Defendant and the Attorney Defendant were unjustly enriched by their receipt of the allegedly fraudulent transfers. Additionally, from its review and assessment of the undisputed facts presented, the court discerns a fourth overarching issue: whether the avoidance of any of these allegedly fraudulent transfers are recoverable under § 550.[3]

### c. Analysis

It is well-recognized that, like a trustee, a debtor-in-possession ("DIP") has a paramount duty "to act on behalf of the bankruptcy estate, that is, for the benefit of creditors." *In re Cybergenics Corp.,* 226 F.3d 237, 243 (3d Cir. 2000); *see also Commodity Future Trading Comm'n v. Weintraub*, 471 U.S. 373, 352 (1985); *Wellman v. Wellman*, 933 F.2d 215, 218 (4th

---

[3] Pertinent to the matter at hand, § 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, <u>for the benefit of the estate</u>, the property transferred, or, if the court so orders, the value of such property, from –
    (1) the initial transferee of such transfer or the entity for shoes benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a)(emphasis supplied).

Cir. 1991)(An avoidance action cannot be maintained unless the estate is benefitted by recovery of the transferred property.). The immediacy of a benefit to creditors when assessing benefit to the estate under § 550 has resulted in some difference of opinion among the courts.

Courts are divided on whether to construe the "benefit to the estate" requirement broadly or narrowly. *See Trans World Airlines, Inc. v. Travellers Int'l AG* (*In re Trans World Airlines, Inc.*), 163 B.R. 964, 973 (Bankr. D. Del. 1994) (canvasing cases on both sides).

Under the broad view, which appears to be the majority view, "[b]enefit for purposes of § 550 includes both direct benefits to the estate (*e.g.*, an increased distribution) and indirect ones (*e.g.*, an increase in the probability of a successful reorganization). *In re Tronox Inc.*, 464 B.R. 606 (2012), *citing In re Acequia, Inc.*, 34 F.3d 800, 811 (9th Cir. 1994). These courts recognize that the benefit to the estate is a broader concept than the benefit to creditors. *See, e.g., Stalnaker v. DLC, Ltd.* (*In re DLC, Ltd.*), 295 B.R. 593 (8th Cir. B.A.P. 2003). In *Trans World Airlines* the court concluded that a sufficient indirect benefit to creditors accrued from the fact that the recovered funds would increase the probability that the Debtor's reorganization would be successful. 163 B.R. at 973. Judge Walsh stated that "the unsecured creditors will benefit from the enhanced value of reorganization TWA by reason of being shareholders of the reorganized debtor…" *Id*.

Accordingly, courts adopting the broad view find a benefit "even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers." *See In re Acequia, Inc.*, 34 F.3d at 811. In *Acequia*, the court found a benefit to the estate because recovery of the fraudulent transfer would aid the post confirmation payments to the secured creditor and reimburse the estate for the costs of pursuing

the fraudulent transfer litigation. *Id.* at 811-12; *see also DuVoisin v. East Tennesee Equity, Ltd* (*In re Southern Indus. Banking Corp.*), 59 B.R. 638, 641 (Bankr. E.D. Tenn. 1986) ("[c]learly, to the extent that plaintiff's recovery of fraudulent transfers and preferences operates to increase the assets and financial health of the successor-in-interest, it also operates to proportionally increase the value of those ownership rights in the successor-in-interest which constitute a portion of the unsecured creditors' distribution under the plan."). A Court has also found a benefit where assignment of a cause of action to a purchaser facilitates the sale of the debtor and therefore provides a benefit before the litigation is even initiated. *See In re Tronox, Inc.*, 464 B.R. at 614, *citing Mellon Bank v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003).

Under the narrow view, courts require a direct and tangible benefit to creditors. *See Harstad v. First Am. Bank* (*In re Harstad*), 155 B.R. 500, 511-12 (Bankr. D. Minn. 1993). As stated by the *Harstad* court, "other courts assume that an increase in wealth to the reorganized debtor will benefit the creditors. I do not agree. After all, the debtors, not committing to their creditors, are in no way obligated to segregate or even keep the recoveries . . . They can spend, invest or even burn the recoveries. These actions do not benefit creditors. Creditors must be meaningfully and measurably benefitted." Similarly, in *Wellman*, following confirmation of a plan that satisfied all creditor claims the Debtor instituted a § 548 action against certain creditors. 933 F.2d at 219. The Fourth Circuit affirmed the District Court's holding that the debtor could not prosecute the fraudulent transfer cause of action because any recovery would not benefit the bankruptcy estate, but rather would benefit only Mr. Wellman. *Id*.

In the matter at hand, even applying the broadest application of the "benefit to the estate" requirement, there is no conceivable benefit to the estate, either directly or indirectly. The Plan

13

provided for full payment of all creditor claims, and as of August 1, 2013, all non-priority general unsecured creditors of Debtor New Life had been paid in full with interest, under the Debtors' joint *liquidating* plan. There were no non-priority general unsecured creditors of the joint Debtor Providian, and its secured creditor was paid in full. Further, the Plan provided that after making a 100% payment to creditors, the "balance of value in the New Life estates, including cash, unsold assets, claims and *causes of action*, shall be distributed to the holder of the Equity Interest in New Life." Thus, the only entity that stands to benefit from avoidance of the alleged fraudulent transfers is Herkimer. There is no ongoing reorganized entity and no creditors who will receive post-confirmation payment. Consequently, there is no benefit to the estate from prosecution of this adversary proceeding, and summary judgment must be granted in favor of the Defendants.

## CONCLUSION

Debtor New Life may not recover the alleged fraudulent transfers identified in its Complaint because any recovery would solely benefit the equity owner, Herkimer, and thus would not be "for the benefit of the estate" as required by § 550(a). Accordingly, summary judgment is granted in favor of Defendants on all counts.

Date: December 3, 2014      ____/S/_____
                                                                                NOVALYN L. WINFIELD
                                                                                United States Bankruptcy Judge